UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

JASON DAVID MONACO,

        Plaintiff,

        v.

JOHN DOE (1), *et al.*,

        Defendants.

        Case No. 2:22-cv-2888
        Judge Sarah D. Morrison
        Magistrate Judge Elizabeth P. Deavers

## ORDER and
## REPORT AND RECOMMENDATION

Jason David Monaco, an Ohio prisoner proceeding without the assistance of counsel, has filed a civil rights action under 42 U.S.C. § 1983.  (Complaint, ECF No. 1-1.)  He alleges that Defendants violated his constitutional rights during his brief incarceration at Ross Correctional Institution.  (*Id.*)  The matter has been referred to the Undersigned pursuant to 28 U.S.C. § 636(b) and General Order 22-05 regarding assignments and references to United States Magistrate Judges.  It is currently before the Undersigned to consider Monaco's application to proceed *in forma pauperis* and his motions for appointment of counsel, and to conduct the initial screen of his Complaint as required by law.  28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2).

For the reasons that follow, the Undersigned **GRANTS** Monaco's Application to proceed *in forma pauperis* (ECF No. 1) and **DENIES** at this time his Motions for appointment of counsel (ECF No. 2, 4).  The Undersigned **RECOMMENDS** that the Court allow Monaco to **PROCEED** further on his Eighth Amendment claims for failure to protect, excessive force, and deliberate indifference to a serious medical need, as described herein, as well as on one of his civil conspiracy claims.  The Undersigned **RECOMMENDS** that the remaining claims,

including all the claims against the Defendants in their official capacities, be **DISMISSED** for failure to state a claim upon which relief may be granted.

I.      **Application to Proceed *In Forma Pauperis***

Monaco's Application to Proceed *In Forma Pauperis* (ECF No. 1) is **GRANTED**. It is **ORDERED** that he be allowed to prosecute this action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid.

Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1914. Because he is permitted to proceed *in forma pauperis*, he is not required to pay the Court's administrative fee of $52. *See* Judicial Conference Schedule of Fees, No. 14 (issued in accordance with 28 U.S.C. § 1914), available at https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule (accessed Sep. 13, 2022). Plaintiff's Application, however, reflects that that he does not currently have sufficient funds to prepay the full filing fee. The custodian of Plaintiff's inmate trust account at the institution of his residence is therefore **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six months immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). If Plaintiff does not currently possess the funds to pay the initial filing fee, the amount assessed shall be collected from Plaintiff's account when such funds become available. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bring a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

Once the initial partial filing fee is paid, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account if, during that month, the balance of that account exceeds $10.00, until the full fee of $350 has been paid. 28 U.S.C. § 1915(b)(2); *see McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). If Plaintiff is transferred to another institution, the current custodian should forward this Order to that institution so that the new custodian of Plaintiff's account can collect and remit the monthly partial payment.

Checks are to be made payable to "Clerk, U.S. District Court" and sent to:

Prisoner Accounts Receivable
Joseph P. Kinneary United States Courthouse
85 Marconi Boulevard, Room 121
Columbus, Ohio 43215

*The prisoner's name and this case number must be included on each remittance*.

The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

## II. Initial Screening Standard

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis*, the Court is required to conduct an initial screen of his Complaint. 28 U.S.C. §§ 1915A(a) and 1915(e)(2). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and

evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## III. Parties and Claims

Plaintiff Monaco names twelve defendants in the Complaint, nine of whom are identified as John Doe or Jane Doe corrections officers or medical staff for the Ohio Department of Rehabilitation and Corrections ("ODRC"), working at Ross Correctional Institution ("RCI"). (Complaint, ECF No. 1-1, PageID 13-14, 16.[1]) He also names the Warden and Deputy Warden

---

[1] The Undersigned will cite to ECF No. 1-1 as the "Complaint" in the following discussion. Because the Complaint contains numbered paragraphs and will be separately filed on the docket, some allegations will be cited by paragraph number rather than PageID for greater precision.

4

of RCI, as well as Kelly Riehle, an Assistant Chief Inspector for the ODRC. (Complaint, PageID 15, 17.) All the Defendants are sued in their individual and official capacities. (Complaint, PageID 15.)

Monaco was incarcerated at RCI for only a brief time: from January 30 through February 19, 2021. (Complaint, ¶ 16.) He alleges the following facts, which are accepted as true for the purpose of this screen. While at RCI, corrections officers and staff told other inmates—in particular, the members of a gang—which inmates "had sex cases." (Complaint, ¶¶ 16, 19.) The identified inmates were then harassed and physically assaulted by other inmate gang members. (Complaint, ¶¶ 16-17, 29.) These allegations form the basis of a conspiracy claim against several of the Defendants. (Complaint, ¶¶ 17, 36, 38, 40, 45.) Because of the nature of Monaco's conviction (which he contested and was appealing), he feared for his life. (Complaint, ¶¶ 17, 18, 20.)

Gang members eventually learned about Monaco's conviction, he suspects, from corrections officers. (*See* Complaint, ¶ 18 ("in the morning [my cellmate] told me 'they know about your case' 'They had someone look you up on the outside'. I knew he was lying, and that he was covering for the Corrections Officers, but I let it go.").) Monaco was told he had "to leave" the cell or he and his family would be attacked. (Complaint, ¶ 19.) It is not entirely clear from the Complaint, but the context suggests that Monaco's option was to "check in" with staff and seek some kind of alternative housing status. (Complaint, ¶¶ 19-20.)

But officers would not let Monaco check in. (Complaint, ¶¶ 19, 20.) Instead, two officers threatened to plant drugs in his cell if he did not return to the cell and lock down. (Complaint, ¶ 19.) Monaco tried again to check in the next day, but the officer on duty did not have time and told Monaco to talk to the officers on the next shift. (Complaint, ¶ 20.) Before

Monaco could do so, officers "allowed 7 inmates into our cell" to steal Monaco's personal

property, and to intimidate and extort Monaco because of his criminal case.  (Complaint, ¶ 20.)

When the next shift arrived, Monaco tried a third time to check in:

> The second shift CO's came in, including John Doe (3), and I said "They are
> threatening my life, I have to get out of this block" to Him and He laughed and said
> "good". Knowing I have a Mental Health Case load, knowing they have to act in a
> suicide situation, I began digging into my wrist with the metal clip of my ID. I
> figured I will take my chances forcing the guards hand rather than getting beaten to
> death by the inmates. This took a while to rub away enough layers of skin to start
> bleeding. I had to do something or I might die if attacked by the inmates.

(Complaint, ¶ 20.)  The responding officer

> looked at me thru the window and said "seriously?". I said "SERIOUSLY". He said
> "on your knees". I obliged. I even put my ID on the bed behind me before I got on
> my knees. The officer then cracked the door and began to yell "stop" 3 times and
> then unloaded a full can of OC spray directly into my eyes in a 2-foot range. I could
> feel the pressure stream cross my right eye, over my glasses, across my cheek,
> across my lips and down my neck. If it weren't for my glasses, the stream could
> have very well permanently damaged my eye at such close range. Then, the officer
> cuffed me and walked me down the steps, yelling "another chowmo". This further
> endangered my life by letting the whole entire dorm know I have a "case"
> regardless of being innocent.

(Complaint, ¶ 20.)  Despite repeated and tearful requests, Monaco was not permitted to wash the

OC spray from his face for some number of days.  (Complaint, ¶¶ 22-26 ("I begin to cry and it

re-activated the OC spray all over again. It is so strong this time that I felt like I was going to

pass out. I cried in agony[.]").)  Eventually, an inmate porter brought Monaco a bar of soap after

officers and medical staff refused to let him clean up.  (Complaint, ¶ 26.)

Monaco alleges that officers and staff at RCI failed to protect him from violence or

threats of violence from other inmates and failed to investigate his reports that he was in danger

and was mistreated.  He alleges that one officer used excessive force against him, and that

several staff members failed to provide medical care after he was sprayed with a chemical

irritant.  (Complaint, ¶¶ 35-57.)  He also raises a claim concerning the conditions of his

6

confinement in the suicide cell.  (Complaint, ¶¶ 23-24, 57.)   Some of these claims are discussed

in more detail below.  Monaco seeks an award of damages, including punitive damages, in an

unspecified amount against the Defendants "severally and jointly."  (Complaint, ¶ 59.)

Monaco raises these claims under 42 U.S.C. § 1983.  (Complaint, ¶ 1.)  To state a cause

of action under Section 1983, he must allege:  "(1) a deprivation of a right secured by the

Constitution or laws of the United States (2) caused by a person acting under color of state law."

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation

omitted).

## IV.    Discussion

The Undersigned concludes that the Court should allow some of Monaco's claims to

proceed to further development, as outlined below.  The Court should dismiss the remainder.

### A.    <u>Official Capacity Claims</u>

Before discussing the substantive claims, the Undersigned considers the defendants

against whom the claims are made.  As noted, Monaco sues the Defendants both in their

individual (or personal) capacities, and in their official capacities.  (Complaint, PageID 15.)

"While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for

actions he takes under color of state law,' individuals sued in their official capacities stand in the

shoes of the entity they represent."  *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Thus, "[a] suit against an individual in his

official capacity is the equivalent of a suit against the governmental entity."  *Matthews v. Jones*,

35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58,

68 (1989)).   Here, Monaco alleges that the Defendants are all working for the ODRC, which is

an agency of the State of Ohio.  (Complaint, ¶¶ 4-15.)  *Fields v. Ohio Dep't of Rehab. & Corr.*,

No. 2:15-cv-1271, 2015 WL 6755310, at *3 (S.D. Ohio Nov. 4, 2015.) Claims against them in their official capacities are thus the same as claims against the State of Ohio.

Claims for damages against the State of Ohio are barred by the Eleventh Amendment to the United States Constitution, which "'denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent.'" *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018) (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945)). "The [United States Supreme] Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Maben*, 887 F.3d. at 270, (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). Here, "because Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983," the State of Ohio has immunity for claims against it. *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) (citing *Ohio v. Madeline Marie Nursing Homes # 1 & # 2*, 694 F.2d 449, 460 (6th Cir. 1984) and *Giles v. Univ. of Toledo*, 478 F. Supp. 2d 924, 960-61 (N.D. Ohio 2007)).

This immunity "extends to state officials sued in their official capacity" for damages, such as is pursued here. (Complaint, ¶ 59.) *Smith v. DeWine*, 476 F. Supp. 3d at 650-51. Again, this is because "'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'" *McCoy v. Michigan*, 369 Fed. App'x. 646, 654 (6th Cir. 2010) (quoting *Will*, 491 U.S. at 71).

The Undersigned accordingly **RECOMMENDS** that all the claims against all the Defendants *in their official capacities* be **DISMISSED**. The claims against the Defendants *in their individual capacities* are discussed in the sections below.

8

**B.**    <u>**Eighth Amendment Claims for Failure to Protect, Excessive Force, and Deliberate Indifference to Serious Medical Needs**</u>

Under the Eighth Amendment, prison officials have an obligation "to take reasonable measures to guarantee the safety of the inmates" in their custody.  U.S. CONST. amend. VIII; *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  The Eighth Amendment also protects prisoners from the use of excessive force and unwarranted physical assaults by prison staff.  *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).  It further "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  Monaco's allegations in the Complaint implicate these Eighth Amendment guarantees.

Without the benefit of an Answer or further briefing, the Undersigned **RECOMMENDS** that the Court allow the following claims to **PROCEED** to further development:

1.  <u>Failure to Protect claim(s)</u>, against:

    a.   John Doe (1) – (*see* Complaint, ¶¶ 19, 35).[2]

    b.   John Doe (2) – (*see* Complaint, ¶¶ 19, 37).

    c.   John Doe (3) – (*see* Complaint, ¶¶ 20, 39).

2.  <u>Excessive Force claim</u>, against John Doe (3) – (*see* Complaint, ¶¶ 20, 41).

3.  <u>Deliberate Indifference to Serious Medical Needs claim(s)</u>, against:

    a.   John Doe (4) – (*see* Complaint, ¶¶ 21-24, 42).

    b.   John Doe (6) – (*see* Complaint, ¶¶ 25, 46).

    c.   Jane Doe (1) – (*see* Complaint, ¶¶ 24-25, 48).

---

[2] These and the following citations are provided for the parties' reference and are not intended to limit the facts that Monaco may present to the Court in later proceedings.

      d.   Jane Doe (2) – (*see* Complaint, ¶¶ 22, 50).

      e.   Jane Doe (3) – (*see* Complaint, ¶¶ 22, 52).

These claims should proceed against these Defendants in their individual capacities. The Undersigned expresses no opinion on the merits of the claims at this time.

**C.**    **Conspiracy Claims**

Monaco asserts that the John Doe and Jane Doe Defendants—corrections officers and medical staff—committed conspiracy. He describes two distinct conspiracies with different aims. The first was a conspiracy "against those [inmates] with sex cases" (Complaint, ¶¶ 36, 38, 40, 45) where officers would "utilize other violent inmates as pawns" to "punish inmates" for their convictions (*id*. at ¶ 41). Monaco alleges, for example, that:

> Officer John Doe (3) committed conspiracy in his individual and official capacity. The officer acted in concert with the other defendants in a conspiracy against those with sex cases. The officer was aware of the targeting of individuals in the dorm and the act was premeditated.

(Complaint, ¶ 40.) John Doe (1), John Doe (2), John Doe (3), and John Doe (5) were allegedly part of this conspiracy, as were some inmates. (Complaint, ¶¶ 36, 38, 40-41, 45, 16.)[3]

The second conspiracy was against Monaco personally, and its intent was "to see Mr. Monaco suffer one way or another in violation of his constitutional rights." (*Id*., ¶¶ 41, 43, 47, 49, 51, 53.) This alleged conspiracy involved others, including medical personnel. For example, Monaco says:

> Nurse Jane Doe (2), committed conspiracy. The Nurse and her co-conspirators through her gross negligence of duty in her in individual and official capacity had

---

[3] Monaco *suggests* that the Warden was part of this conspiracy but does not raise a conspiracy claim against him. (Complaint, ¶ 29 ("Clearly, all of this was conspired by the prison officials including the Warden on down, and allowed to transpire by those same officials."), and ¶ 55 (describing the claim against the Warden as follows: The Warden, in not thoroughly investigating the situation, denied Mr. Monaco his 14th Amendment rights to Due Process. The Warden, by not questioning the activities that transpired during the three weeks in February of 2021, shows that he encourages this behavior from his officers.").) No facts are presented that would support including the Warden in this alleged conspiracy, so the Undersigned presumes that Monaco did not intent to include such a claim against him.

the malicious intent to see Mr. Monaco suffer one way or another in violation of
his constitutional rights.

(Complaint, ¶ 51.)  John Doe (3), John Doe (4), John Doe (6), Jane Doe (1), Jane Doe (2), and

Jane Doe (3) were allegedly involved in this conspiracy against Monaco.  (Complaint, ¶¶ 41, 43,

47, 49, 51, 53 (using the same or similar language).)  These two alleged conspiracies will be

examined here separately, as a civil conspiracy claim require a plaintiff to show a "single plan"

between conspirators.[4]  *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure

another by unlawful action."  *Crowley v. Anderson Cnty., Tenn.,* 783 F. App'x 556, 560 (6th Cir.

2019) (internal citations and quotations omitted).  "To prevail on a civil conspiracy claim, [a

plaintiff] must show that (1) a "single plan" existed, (2) [the defendant] "shared in the general

conspiratorial objective" to deprive [the plaintiff] of his constitutional (or federal statutory)

rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused the

injury" to [the plaintiff].  *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting

*Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

"The Sixth Circuit has warned that 'conspiracy claims must be pled with some degree of

specificity and that vague and conclusory allegations unsupported by material facts will not be

sufficient to state such a claim under § 1983.'"  *Ayers v. Gabis*, No. 20-11735, 2021 WL

4316853, at *6 (E.D. Mich. Sept. 23, 2021) (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir.

2008).  "These guidelines have led the court to conclude that the 'pleading requirements

governing civil conspiracies are relatively strict.'"  *Id*.

---

[4] To the extent that Monaco would present this as a single conspiracy, all of the claims would fail on the "single
plan" requirement.  *See, e.g., Hooks*, 771 F.2d at 944 (affirming summary judgment on conspiracy claim that
essentially alleged two separate plans by different groups).

It appears that Monaco arguably meets these requirements with respect to the first conspiracy alleging that certaom officers at RCI told violent inmates which inmates had "sex cases," using them to punish these inmates, with resulting injuries.  (Complaint, ¶¶ 16-17, 20-21, 28-29, 41; Lovingshimer Declaration, ECF No. 1-2, PageID 27-28.)

However, Monaco's allegations with respect to the second conspiracy against him personally do not state a claim.  Most of his allegations in this respect are simply legal conclusions.  (Complaint, ¶¶ 41, 43, 47, 49, 51, 53.)  He simply alleges that the defendants "through [his or her] gross negligence of duty in [his or her] individual and official capacity had the malicious intent to see Mr. Monaco suffer one way or another in violation of his constitutional rights."  (Complaint, ¶ 49.)  What is missing is any specific factual allegation of a plan or agreement between these Defendants to see Monaco suffer.  His conclusory allegations appear to be based instead on these Defendants' refusal to allow him to wash his face, while on suicide watch, after being sprayed with a chemical irritant.  (*See* Complaint, ¶¶ 22, 24-27.)  But there is no allegation or suggestion that these six Defendants *agreed* to see him suffer; Monaco presumes the existence of a conspiracy because of their actions/inactions.  Such presumption is insufficient.  *See Huffer v. Bogen*, 503 F. App'x 455, 462 (6th Cir. 2012) ("Huffer's claim of conspiracy merely described the actions taken by various individual defendants, asserting that their actions were taken in furtherance of a conspiracy.  Huffer's claim is conclusory and fails to include allegations regarding an agreement or shared plan between the individual defendants to violate his civil rights."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim).  Such "conclusory assertions that defendants were acting in concert do not meet

12

the requirement that allegations of a conspiracy be pled with some degree of specificity."
*Ashenhurst v. 27th District Court*, No. CIV. 07-10082, 2007 WL 1119883, at *2 (E.D. Mich.
Apr. 16, 2007) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) and *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984)).

Accordingly, without the benefit of an Answer or further briefing, the Undersigned **RECOMMENDS** that the Court allow Monaco's first conspiracy claim against John Doe (1), John Doe (2), John Doe (3), and John Doe (5), in their individual capacities, to **PROCEED** to further development.  The Undersigned expresses no opinion on the merits of this claim at this time.

The Undersigned **RECOMMENDS** that the Court **DISMISS** the second conspiracy claim against John Doe (3), John Doe (4), John Doe (6), Jane Doe (1), Jane Doe (2), and Jane Doe (3) for failure to state a claim upon which relief may be granted.

### D.  Supervisory or Vicarious Liability Claim Against John Doe (5)

Monaco alleges that John Doe (5), a shift supervisor, "was responsible for the actions of his subordinates at the time of the constitutional rights violations."  (ECF No. 1-1, PageID 23.)
This allegation fails to state a claim, as "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another."
*Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).  For such a claim to proceed, "a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (cleaned up).  Monaco has not alleged facts in his Complaint that satisfy this requirement.

(Complaint, ¶ 27, 44.) He alleges only that John Doe (5) told him where to sign a form when Monaco tried to explain that the facts were not as a report said, and failed to investigate further. (*Id.*)[5]

It is also well-settled that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability." *Hinton v. Skipper*, No. 1:21-cv-480, 2021 WL 4859744, at *2 (W.D. Mich. Oct. 19, 2021) (citing *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009)). "Rather, individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)). The brief allegations against John Doe (5) do not reflect such unconstitutional behavior.

The Undersigned therefore **RECOMMENDS** that any supervisory or vicarious liability claim against John Doe (5) be **DISMISSED**.

### E.     Failure to Investigate Claim(s)

Monaco also alleges that John Doe (5) "did not fulfill his duties by properly investigating the incident which led to a violation of Mr. Monaco's constitutional rights. This denied Mr. Monaco his 14th Amendment right to Due Process." (Complaint, ¶ 44.) He raises a similar

---

[5] Monaco says:

> I tried to explain to the white shirt, supervisor, when interviewed about the ticket that I did not resist, that the spray was not justified. I tried to explain the situation and he just said sign here. (John Doe (5), a man in his mid-60's, about 230 lbs., white hair, white beard) He asked if I want to go back to 7A and I said hell no I will get beat up. He sent me back to my cell in the hole.

(Complaint, ¶ 27.)

claim against Kelly Riehle, an Assistant Chief Inspector for the ODRC (*id*., ¶ 13, 32,[6] 54[7]), the RCI Warden (*id*. at ¶ 55[8]), and the Deputy Warden (or DWO) (*id*. at ¶ 15, 56[9]).

Several legal principles prevent Monaco from succeeding on such a claim. First, "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). And, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). This is because a § 1983 claim requires a plaintiff to allege the deprivation of a *constitutional* right. *LaFlame v. Montgomery Cnty. Sheriff's Dep't.*, 3 F. App'x 346, 348 (6th Cir. 2001). But "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Without a constitutional right to point to, a plaintiff cannot allege the *denial* of a constitutional right.

Accordingly, these Defendants cannot be held liable under § 1983 for failing to respond to Monaco's grievances or reports as he believes would have been appropriate. *See Lee v. Mich. Parole Bd.*, 104 Fed. App'x. 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be

---

[6] Monaco says: "The first kite/grievance (Exhibit D) was denied on the use of force stating that all protocols were followed. I appealed and Assistant Chief Inspector K. Riehle did not investigate any further than what was on the screen, again. No review of cameras." (Complaint, ¶ 32.)

[7] Monaco says: "Defendant, Kelly Riehle, in her official and individual capacity, denied Mr. Monaco his 14th Amendment Rights to Due Process. Kelly Riehle is responsible for Inmate Administrative Grievance investigations at the highest level within the ODRC. Failed in her responsibility to ensure that any grievance on use of force brought to level of appeal is thoroughly and completely investigated following all rules under ORC 5120-9-02. By deliberately not investigating the situation, denied Mr. Monaco his 14th Amendment Constitutional Rights to Due Process." (Complaint, ¶ 54.)

[8] Monaco says: "The Warden, in not thoroughly investigating the situation, denied Mr. Monaco his 14th Amendment rights to Due Process. The Warden, by not questioning the activities that transpired during the three weeks in February of 2021, shows that he encourages this behavior from his officers." (Complaint, ¶ 55.)

[9] Monaco says: "Defendant DWO, in his/her official and individual capacity, directly violated Mr. Monaco's 14th Amendment Rights of due process by not thoroughly investigating the Use of Force incident." (Complaint, ¶ 56.)

imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.").

For similar reasons, courts have specifically held that a failure to investigate another person's alleged constitutional violation "do[es] not constitute 'active constitutional behavior' as required and thus, [is] not actionable" under § 1983. *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). This Court has dismissed similar claims:

> The complaint should also be dismissed to the extent that plaintiff seeks to hold any defendant liable in connection with the grievance process or investigation of his claims. Plaintiff claims that Barney failed to view the camera footage . . . and that defendant Sparks failed to take corrective action with respect to officers' actions despite plaintiff's claim that he notified Sparks of his issues through the grievance procedure . . . . However, "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). Furthermore, to the extent that plaintiff claims that the grievance procedure failed to produce the correct outcome, this cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citations omitted). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior' " cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Therefore, plaintiff's claims that Barney, Sparks, or any other defendant failed to investigate the incident or take corrective action should be dismissed for failure to state a claim upon which relief may be granted.

*Johnson v. Osborne*, No. 1:21-cv-3, 2021 WL 2077908, at *4 (S.D. Ohio Apr. 27, 2021), *report and recommendation adopted*, 2021 WL 2093258 (S.D. Ohio May 24, 2021) (McFarland, J.).

In addition, to the extent Monaco is raising a claim that these Defendants failed to follow ODRC policy in the grievance procedure or investigations, his claim fails. Section 1983 does not provide a remedy for alleged violations of state laws or regulations. *See Williams v. Burgess*,

No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)) ("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate"). And, "[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure." *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D. Mich. Aug. 30, 2021) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) and other cases). Thus, the "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases).

The Undersigned therefore **RECOMMENDS** that the failure to investigate claim(s) and any other claims concerning the institutional grievance procedure against John Doe (5), Kelly Riehle, the Warden, and the DWO be **DISMISSED** for failure to state a claim.

### F.    Conditions of Confinement Claim

Monaco faults the DWO for the conditions in the suicide cell. He says:

Defendant DWO, in his/her official and individual capacity, by not ensuring the suicide cell had at the very least, running sink water, directly violated Mr. Monaco's 8th Amendment Right to be free from cruel and unusual punishment via the conditions of confinement.

(Complaint, ¶ 57.) He explains: "The shower and sink water were both disabled in the cell. There was a running toilet, but I was not going to risk infection/blindness in my eyes by washing them with toilet water even though it hurt so bad . . . ." (Complaint, ¶ 24.) It appears that

17

Monaco was in this cell, without running water in the sink or shower stall, for one or two days. (Complaint, ¶ 24-26.)

It is well-settled that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Pfeiffer v. Butler Cnty. Sheriff Dep't.*, No. 1:10-cv-672, 2012 WL 1203557, at *8 (S.D. Ohio Apr. 10, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Eighth Amendment, which protects prison inmates from "cruel and unusual punishments," also protects them against "extreme deprivations" that deny "the minimal civilized measure of life's necessities" while in prison. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

However, "[a]llegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Pena v. Brown*, No. 2:20-cv-250, 2021 WL 4350124, at *5 (W.D. Mich. Sept. 23, 2021) (collecting cases). For example, the Sixth Circuit has "concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time . . . , i.e., only six days' is not actionable conduct." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000)).

Being held in a cell without any running water for an extended period of time, coupled with a claim that the inmate did not have access other water facilities, could state a viable conditions of confinement claim. *See, e.g., Bumpus v. Howard*, No. 3:19-cv-01081, 2020 WL 4431463, at *10 (M.D. Tenn. July 30, 2020).[10] Here, however, Monaco's allegations are not

---

[10] In *Bumpus*:

18

similarly serious.  He was held in a cell without *some* water facilities; he still had access to a

working toilet.  (Complaint, ¶ 24.)  Here, he was held for, it appears, one or two days without a

shower or a working sink.  (*Id.*, ¶ 14-26.)  Although the inability to wash his face or shower

should proceed as part of Monaco's deliberate indifference claim discussed above, the

Undersigned concludes that this allegation does not separately state a claim that the conditions of

his confinement deprived him of "the minimal civilized measure of life's necessities."  *Hudson*,

503 U.S. at 9.  *See Wiley v. Ky. Dep't of Corr.*, No. 11-97, 2012 WL 5878678, at *4 (E.D. Ky.

Nov. 21, 2012) (holding that inmate's placement in a "dry cell" with no running water failed to

state a constitutional claim because the discomforts the inmate experienced lasted for only 14

days); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (affirming dismissal of Eighth

Amendment claim that correctional officer turned off the water to plaintiff's cell on one

occasion, as it was a temporary inconvenience).  Accordingly, the Undersigned

**RECOMMENDS** that Monaco's conditions of confinement claim against the DWO be

**DISMISSED** for failure to state a claim.

### G.      Claims on Behalf of Other Inmates

Monaco refers to injuries allegedly sustained by other inmates in his Complaint.  (*See,
e.g.*, Complaint, ¶ 29 (another inmate with a case "was beaten in the entryway of the dorm 7A on

Sunday the 7th of February 2021 after supper by the same inmates (KF's) threatening Mr.

Monaco and placed in solitary. Mr. Carswell was told his incident wasn't caught on camera. Mr.

---

Plaintiff allege[d] that Chief Howard placed him in two cells (successively) without running water
for eight consecutive days. (*See* Doc. No. 1-1 at 2-3 (alleging placement in an intake cell without
water for one day and a cell in D-unit without water for one week)). Liberally construed, the
Complaint also alleges that Plaintiff did not have access to other water facilities during part or all of
this time. (*See id*. at 3 (alleging that Plaintiff's "stomach was bloated from not being able to use the
bathroom," his skin condition worsened, and he was unable to perform religious rituals requiring
water). Especially given the alleged duration of the deprivation, these allegations are sufficient to
state a colorable individual-capacity conditions-of-confinement claim against Chief Howard.
2020 WL 4431463, at *10.

Carswell was sprayed in the face as well and then punched in the face by the CO who placed him into solitary."); Lovingshimer Declaration, ECF No. 1-2, PageID 27 ("I went to Ross in January of 2021. 1 was in 7a, the CO's went around telling inmates who had sex cases and I got jumped right out of the chow hall. I got my front teeth knocked out. One was really loose and I tried to go to IHS (Inmate Health Services) but the CO's wouldn't let me go. A few inmates said if I "checked in" I could go to IHS. The Co.'s wouldn't let me; it took three shifts to go. Then the whole way to the hole, the Co was bragging about making me check in. They told everyone in the hole I was a "Chomo". They put me in a cell with a noose on the vent[.]"); Complaint, ¶ 54 ("By not investigating, [Defendant Riehle] allows such activity to continue, denying others of their constitution rights now and in the future as well.").)

These allegations, which may be relevant to Monaco's conspiracy claim, are indeed concerning. But Monaco lacks standing to raise claims on behalf of other inmates. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (standing encompasses, among other things, "the general prohibition on a litigant's raising another person's legal rights") (citations omitted); *Corn v. Sparkman,* 82 F.3d 417, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) (unpublished table decision) ("A prisoner cannot bring claims on behalf of other prisoners. A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights.") (citation omitted). More specifically, a prisoner does not have standing to bring a § 1983 claim on behalf of others. *See Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) (citing *Jones v. Caruso,* 569 F.3d 258, 276-77 (6th Cir. 2009)). To the extent that Monaco seeks or would seek to bring claims on other inmates' behalf, the claims should be dismissed.

### H.    Other Issues Raised in the Complaint

#### 1. *Verbal Harassment*

Monaco notes some verbal harassment from certain defendants in the Complaint.  (*See, e.g.*, Complaint, ¶ 19 (John Doe (1) "yelled at me to lock down or 'I will come up there and spray both of your asses and plant tune in your cell, and I've got a lot of it!'"); ¶ 20 (John Doe (3) responded to Monaco saying "[t]hey are threatening my life, I have to get out of this block" with a laugh, saying, "good"); ¶ 20 (John Doe (3) yelled that Monaco was "another chowmo"); ¶ 24 (John Doe (4) said, when Monaco pleaded to clean up from the OC spray:  "burn baby burn! You fucking chomo!").)

"Harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation."  *Mallory v. Smith*, No. 3:17-cv-P253, 2017 WL 3484690, at *3 (W.D. Ky. Aug. 14, 2017) (collecting cases); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."). Likewise, "verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment."  *Snelling v. Smith*, No. 1:16-cv-656, 2016 WL 6518264, at *6 (W.D. Mich. Nov. 3, 2016) (citing *Ivey*, 832 F.2d at 955).  Although some of these statements may be relevant to Monaco's other claims, they do not themselves state a claim under § 1983.

#### 2. *Personal Property*

Monaco notes that his belongings were "auctioned off" when he was taken to the suicide and solitary cells.  (Complaint, ¶¶ 28-29.)  Any potential claim against Defendants for allowing

inmates to take Monaco's personal property cannot succeed.  *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Hudson v. Palmer,* 468 U.S. 517, 531-33 (1984) and *Lucien v. Johnson,* 61 F.3d 573, 575-76 (7th Cir. 1995)) ("Plaintiff's allegation that other inmates stole his property fails to state a claim against the prison officials because the prison's negligence in allowing the theft is not a 'taking' for purposes of the Fourteenth Amendment.").

> 3.  *Free Exercise of Religion*

Although he does not expressly raise such a claim in the "Legal Claims for Relief" section of his Complaint, Monaco emphasizes in the facts section that while in the solitary cell, he "asked repeatedly over and over for my Bible" but it was denied, "denying my *1st Amendment Right to free exercise of religion.*"  (Complaint, ¶ 27 (emphasis in original).)

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia, Penn.*, 141 S. Ct. 1868, 1876 (2021). The right is not absolute, but "[p]risoners must be provided 'reasonable opportunities' to exercise their religious freedom guaranteed under the First Amendment."  *Hudson*, 468 U.S. at 523 (quoting *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)).

"Under § 1983, '[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held.'"  *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)).   "[T]he touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are *sincerely held* . . .'"  *Colvin v. Caruso,* 605 F.3d 282, 298 (6th Cir. 2010) (quoting *Jackson v. Mann,* 196 F.3d 316, 320 (2d Cir. 1999) (emphasis in

original)).  Here, Monaco's allegation that he was not permitted to have his Bible while on suicide watch does not plausibly state a claim that he was deprived of the "reasonable opportunity" to exercise a sincerely-held religious belief.  Moreover, the Complaint does not include sufficient factual information to allow the Court to assess whether Monaco's beliefs are sincerely held, which would be required to state a claim.

## I.  <u>Proceeding Further Against John Doe and Jane Doe Defendants</u>

"Although designation of a 'John Doe' or 'unknown' defendant is not favored in the federal courts, it is permissible when the identity of the alleged defendant is not known at the time the complaint is filed and plaintiff could identify defendant through discovery." *Robinson v. Doe*, No. 1:07-cv-729, 2009 WL 650383, at \*2 (S.D. Ohio March 10, 2009) (collecting cases); *accord Woodard v. Farris*, No. 2:20-cv-00007, 2020 WL 1469886, at \*3 (M.D. Tenn. Mar. 25, 2020) (determining that "it would be inappropriate to dismiss the claims against the John Doe Defendants at this juncture because of the likelihood that the identities of these Defendants will be determined during discovery").

Once Monaco discovers the name of the John Doe and Jane Doe Defendants, he will be required to timely amend his Complaint to identify them.  *See generally* Fed. R. Civ. P. 15 (concerning amended and supplemental pleadings); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run"); *Moore v. Moore*, No. 1:19-cv-01634, 2019 WL 6683171, at \*3 (N.D. Ohio Dec. 6, 2019) ("the statute of limitations for all of Plaintiff's § 1983 claims is two years").

In addition, service of process on any newly-identified John Doe defendant must be completed in accordance with Fed. R. Civ. P. 4(m), which states:  "Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its

own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

Monaco should not delay in proceeding against these Defendants.

## V.     Motions for Counsel

Monaco asks this Court to appoint counsel for him.  (ECF No. 2, 4.)  The motions are **DENIED WITHOUT PREJUDICE.**  The Undersigned notes that there is no constitutional right to appointed counsel in a civil case.  *Patmon v. Parker*, 3 F. App'x 337, 339 (6th Cir. 2001).  And, the case has not yet progressed to the point that the Court is able to evaluate the merits of Monaco's claims.  *See Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985) (en banc) ("in considering an application for appointment of counsel, [courts] should at least consider plaintiff's financial resources, the efforts of plaintiff to obtain counsel, and whether plaintiff's claim appears to have any merit.").  The Undersigned will consider a renewed motion for appointment of counsel if this matter proceeds past motions to dismiss and motions for summary judgment.

## VI.     Summary and Conclusion

The undersigned Magistrate Judge **GRANTS** Monaco's Application to Proceed *In Forma Pauperis* (ECF No. 1) and **DENIES WITHOUT PREJUDICE** his Motions for appointment of counsel (ECF No. 2, 4).  Having conducted the initial screen required by law, the Undersigned **RECOMMENDS** that:

1.  The Court allow Monaco to **PROCEED** at this time on his Eighth Amendment claims, as detailed in Section IV(B), against John Doe (1), John Doe (2), John Doe

(3), John Doe (4), John Doe (6), Jane Doe (1), Jane Doe (2), and Jane Doe (3), in their individual capacities.

2. The Court allow Monaco to **PROCEED** at this time on his first conspiracy claim, as detailed in Section IV(C), against John Doe (1), John Doe (2), John Doe (3), and John Doe (5), in their individual capacities.

3. The Court **DISMISS** for failure to state a claim all Monaco's claims against all Defendants in their official capacities.

4. The Court **DISMISS** Monaco's remaining claims, including: the supervisory or vicarious liability claim against John Doe (5); the failure to investigate claim(s) against John Doe (5), Kelly Riehle, the Warden, and the Deputy Warden (DWO); the conditions of confinement claim against the DWO; and any remaining claims on behalf of other inmates; any claims based on verbal harassment, loss of personal property, or the Free Exercise Clause.

5. Should the District Judge adopt this recommendation, the Undersigned further **RECOMMENDS** that the District Judge find that any appeal in this matter by Plaintiff would not be taken in good faith, and that Plaintiff may not proceed on appeal *in forma pauperis*.

Monaco is advised that he must keep this Court informed of his current address and promptly file a notice of his new address if he is released or transferred to a different institution. Once the District Judge considers this Report and Recommendation, the Undersigned will order service of the Complaint on the remaining Defendants, as appropriate.

## VII.    Notice Regarding Objections to this Report and Recommendation

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN DAYS** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**


Dated: September 16, 2022                    */s/ Elizabeth A. Preston Deavers*_____
                                             ELIZABETH A. PRESTON DEAVERS
                                             UNITED STATES MAGISTRATE JUDGE