# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JASON DAVID MONACO,

      Plaintiff,        :

  v.                       Case No. 2:22-cv-2888
                            Judge Sarah D. Morrison
                            Magistrate Judge Elizabeth A.
                            Preston Deavers

JOHN DOE (1), *et al.*,        :

      Defendants.

## OPINION AND ORDER

Jason David Monaco is an Ohio inmate proceeding without assistance of counsel. Mr. Monaco filed this action alleging that his constitutional rights were violated while he was incarcerated at Ross Correctional Institution (RCI). The Magistrate Judge permitted Mr. Monaco to proceed *in forma pauperis* and performed an initial screen of his Complaint, as required by 28 U.S.C. §§ 1915(A) and 1915(e)(2). (ECF No. 5.) The Court ultimately allowed Mr. Monaco to proceed on his Failure to Protect, Excessive Force, Deliberate Indifference, and Civil Conspiracy claims. (*Id.*; ECF No. 8.) The parties then engaged in expedited discovery for Mr. Monaco to ascertain the identities of the John/Jane Doe Defendants named in his original Complaint.

On February 13, 2023, Mr. Monaco filed his Verified Amended Complaint, substituting the Defendants' real names. (Am. Compl., ECF No. 29.) Defendants later filed a Motion for Judgment on the Pleadings; In the Alternative, Motion for Summary Judgment. (ECF No. 63.) On July 2, 2024, the Magistrate Judge issued

an Order and Report and Recommendation construing Defendants' Motion as a Motion for Summary Judgment and recommending that it be granted. (R&R, ECF No. 72.) Mr. Monaco filed his objections (Obj., ECF No. 76), to which Defendants have responded (ECF No. 77).

For the reasons below, Mr. Monaco's objections are **OVERRULED**. The Magistrate Judge's Report and Recommendation is **ADOPTED** and **AFFIRMED**; Defendants' Motion for Summary Judgment is **GRANTED**.

**I.     BACKGROUND**

Mr. Monaco was housed at RCI for three weeks in February 2021. (Am. Compl., ¶ 16.) Mr. Monaco alleges that, while there, he was the subject of harassment and intimidation by corrections officers (COs) and inmates belonging to a gang known as the KFs. (*Id.*, ¶ 17.) The harassment targeted Mr. Monaco and certain other inmates who "had sex cases." (*Id.*)

On February 6, 2021, Mr. Monaco skipped lunch and dinner out of fear. (*Id.*, ¶ 19.) He tried to report his fears to the COs on duty, but they responded by threatening to plant drugs in his cell. (*Id.*)

Frustrated that the COs were not listening, Mr. Monaco "decided [he] needed to take it up a level and start cutting [him]self to get their attention, to make them do their job." (ECF No. 63-1, PAGEID # 598.) At 9:57am on February 7, 2021, Officer Skyler Baldwin walked past Mr. Monaco's cell and saw Mr. Monaco "standing by his door with his wrist in the window cutting his wrist with what appeared to be a broken razor blade." (*Id.*, PAGEID # 569.) (Mr. Monaco alleges that he did not have a razor blade, but instead used the metal clip of his ID badge. (Am.

2

Compl., ¶ 20.)) Officer Baldwin told Mr. Monaco to stop—whether he did is in dispute. (*Compare* ECF No. 63-1, PAGEID # 569 *and* Am. Compl., ¶ 20.) "Recognizing that cutting his wrist could escalate into a life-threatening injury very quickly," Officer Baldwin sprayed "one short burst" of oleoresin capsicum (OC) spray into Mr. Monaco's cell. (ECF No. 63-1, PAGEID # 515.) Mr. Monaco was taken to the RCI medical bay for examination. (ECF No. 63-1, PAGEID # 562–65.)

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. ANALYSIS

### A. Failure to Protect

Mr. Monaco first alleges that Officers Jason Johnson, Michael Mullins, and Skyler Baldwin violated his Eighth Amendment rights by failing to protect him from excessive risks. (Am. Compl., ¶¶ 35, 37, 39.) The Magistrate Judge concluded that Mr. Monaco failed to demonstrate that the Defendants subjectively knew of or disregarded that risk. (R&R, PAGEID # 881.) The Report & Recommendation explains:

> [T]he the issue here is not whether any Defendant knew that Plaintiff was a sex offender or even that sex offenders generally may be more at risk. Rather, the question is whether Defendants Johnson, Mullins, or

3

> Baldwin were aware that other prisoners knew of Plaintiff's sex-offender status and disregarded that risk. *Schoonover*, 2021 WL 4479354, at *9. These Defendants each have submitted evidentiary materials stating, *inter alia*, that they had no reason to believe that Plaintiff was at risk of serious harm from any other inmate at Ross. (ECF No. 63-1, Baldwin Aff., Exhibit 1a ¶ 5, PAGEID #: 514; Declaration of Jason Johnson, Exhibit 1g ¶ 5, PAGE ID: 526; Declaration of Michael Mullins, Exhibit 1h ¶ 5, PAGEID #: 528.) In response, Plaintiff has not identified any evidence demonstrating that any of these Defendants possessed such knowledge. Nor has he presented any facts that would allow any of these specific Defendants to infer such a risk.
>
> Indeed, any assertions in the Verified Amended Complaint of any particular Defendant's knowledge are virtually absent. For example, after describing a threat from his cellmate which, from Plaintiff's perspective, caused him to "fear for [his] life," based on Plaintiff's interpretation of certain events, Plaintiff alleges only that unidentified "CO's on duty were well aware." (ECF No. 29 at ¶ 19.) At most, Plaintiff alleges that he told Defendant Baldwin that "[t]hey are threatening my life, I have to get out of this block." At the same time, Plaintiff fails to allege facts to allow for the inference that Defendant Baldwin knew the identity of "they" in Plaintiff's statement or the basis for any alleged threats to Plaintiff. (*Id.* at ¶ 20.)
>
> These conclusory statements are not sufficient to allow Plaintiff's failure to protect claim to survive summary judgment. With respect to Defendant Baldwin in particular, Plaintiff has not provided any factual support to demonstrate that such a comment, in isolation, would provide Defendant Baldwin with the requisite knowledge to sustain a failure to protect claim arising from the "KF's" knowledge of Plaintiff's status. Plaintiff's submitted Declarations from fellow inmates Charles Lovingshimer IV (ECF No. 1-2) and Andrew Carswell (ECF No. 3) do not aid his case. Instead, these Declarations suffer from the same lack of specificity. As a result, they also fail to demonstrate any particular Defendant's knowledge that Plaintiff faced any risk of substantial harm. (ECF No. 3).

(*Id.*, PAGEID # 880–81.)

In his Objections, Mr. Monaco argues that he could not make any more specific allegations because "inmates are not privy to the actual names of Corrections Officers[.]" (Obj., PAGEID # 906.) But Mr. Monaco's claim suffers from

4

a deficiency of evidence showing Defendants' knowledge—not a deficiency of evidence showing Defendants' identities.[1] Mr. Monaco's objection is **OVERRULED**.

### B. Excessive Force

Mr. Monaco next alleges that Officer Baldwin used excessive force when he deployed the OC spray on February 7, 2021. (Am. Compl., ¶ 41.) The Magistrate Judge concluded that no reasonable jury could find that Officer Baldwin deployed the spray maliciously and sadistically for the purpose of causing harm, and thus recommended that summary judgment be granted to Defendants. (R&R, PAGEID # 884.) The Court agrees. Mr. Monaco's Objections raise issues that were considered and correctly addressed by the Magistrate Judge. They are **OVERRRULED**.

### C. Deliberate Indifference to Medical Needs, Civil Conspiracy

Finally, Mr. Monaco asserts Deliberate Indifference and Civil Conspiracy claims against the Defendants. Defendants argue that Mr. Monaco failed to properly exhaust his administrative remedies on these claims. The Court agrees.

The Prison Litigation Reform Act "requires state prisoners to follow and exhaust all applicable state grievance procedures before filing suit in federal court."

---

[1] The Verified Amended Complaint repeatedly references Officers Johnson and Mullins together. (*See, e.g.*, Am. Compl., ¶ 19 ("The CO, either officer Jason Johnson or Michael Mullins . . . yelled at me to lock down[.]").) As explained in the Report & Recommendation, collective allegations often fail because they lack the specificity needed to hold an individual liable for their own conduct. (*See* R&R, PAGEID # 877.) Mr. Monaco filed a Declaration under Rule 56(d) seeking "mugshots" of Officers Johnson and Mullins so that he could make more specific allegations. (ECF No. 75.) But pinpointing the identity of the CO who threatened to plant drugs in Mr. Monaco's cell does nothing to aid his failure-to-protect claim. Thus, to the extent the Declaration constitutes a motion to defer or for additional discovery, it is **DENIED**.

5

*Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Ohio's inmate grievance procedures are set forth in Ohio Administrative Code § 5120-9-31. The grievance procedure is "comprised of three consecutive steps." Ohio Admin. Code § 5120-9-31(J). First, "[w]ithin fourteen calendar days of the date of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Ohio Admin. Code § 5120-9-31(J)(1). If the inmate is dissatisfied with the result, he may then file a formal grievance with the Inspector of Institutional Services at his institution. Ohio Admin. Code § 5120-9-31(J)(2). If an inmate remains dissatisfied, he may file an appeal to the Office of the Chief Inspector. Ohio Admin. Code § 5120-9-31(J)(3).

On May 13, 2022, Mr. Monaco filed an informal complaint alleging that he received inadequate medical care on February 7, 2021. (ECF No. 63-1, PAGEID # 601.) After the informal complaint was closed on May 17, Mr. Monaco filed a formal grievance alleging for the first time that he was "deliberately targeted by COs[.]" (*Id.*) The grievance—filed fourteen months after the fact—was denied as untimely. (*Id.*, PAGEID # 602.) A "prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely . . . administrative grievance." *Scott v. Ambani*,

6

577 F.3d 642, 647 (6th Cir. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 83 (2006)). The Magistrate Judge thus recommended granting summary judgment on Mr. Monaco's Deliberate Indifference and Civil Conspiracy claims. (R&R, PAGEID # 869.) Mr. Monaco argues that the untimely grievance was "obviously interrelated" to his June 15, 2021 grievance, which was accepted as timely. (Obj., PAGEID # 899.) The Court disagrees. Mr. Monaco's first grievance focused on the RCI COs' response to threat reports against Mr. Monaco and Officer Baldwin's use of OC spray on Mr. Monaco. (ECF No. 63-1, PAGEID # 598.) It did not allege that Mr. Monaco received inadequate medical care or that he was the target of a conspiracy among the COs. (*Id.*) Mr. Monaco's objection is **OVERRULED**.

## IV. CONCLUSION

For the reasons above, the Court **ADOPTS** and **AFFIRMS** the Magistrate Judge's Report and Recommendation (ECF No. 72) and **GRANTS** the Motion for Summary Judgment (ECF No. 63). Mr. Monaco's Objections (ECF No. 76) are **OVERRULED**. The Clerk is **DIRECTED** to **TERMINATE** this case.

       **IT IS SO ORDERED.**

       /s/ Sarah D. Morrison
       **SARAH D. MORRISON**
       **UNITED STATES DISTRICT JUDGE**